UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND

CHAMBERS OF
STEPHANIE A. GALLAGHER
UNITED STATES MAGISTRATE JUDGE

101 WEST LOMBARD STREET
BALTIMORE, MARYLAND 21201
(410) 962-7780
Fax (410) 962-1812

May 10, 2019

LETTER TO COUNSEL

    RE:    *Denise H. v. Commissioner, Social Security Administration*
                 Civil No. SAG-18-1756

Dear Counsel:

On June 14, 2018, Plaintiff Denise H. petitioned this Court to review the Social Security Administration's final decision to deny her claims for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). ECF 1. I have considered the parties' cross-motions for summary judgment and Plaintiff's reply. ECF 13, 17, 18. I find that no hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2018). This Court must uphold the decision of the SSA if it is supported by substantial evidence and if the SSA employed proper legal standards. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). Under that standard, I will deny Plaintiff's motion, grant the SSA's motion, and affirm the SSA's judgment pursuant to sentence four of 42 U.S.C. § 405(g). This letter explains my rationale.

Following a denial on her prior claims for benefits, Plaintiff filed her present claims for DIB and SSI on July 9, 2015, alleging a disability onset date of April 1, 2011.[1] Tr. 384-95. Her claims were denied initially and on reconsideration. Tr. 178-85, 187-90. A hearing was held on July 17, 2017, before an Administrative Law Judge ("ALJ"). Tr. 42-72. Following the hearing, the ALJ determined that Plaintiff was not disabled within the meaning of the Social Security Act during the relevant time frame. Tr. 20-34. The Appeals Council denied Plaintiff's request for review, Tr. 1-6, so the ALJ's decision constitutes the final, reviewable decision of the SSA.

The ALJ found that Plaintiff suffered from the severe impairments of "anxiety disorder, affective disorder, obesity, pancreatitis, myositis, rhabdomyolysis, mild cortical atrophy, and peripheral neuropathy of the bilateral lower extremities." Tr. 23. Despite these impairments, the ALJ determined that Plaintiff retained the residual functional capacity ("RFC") to:

> lift, carry, push, and pull 10 pounds occasionally and less than 10 pounds frequently; sit for 6 hours in an 8 hour workday; stand/walk for 2 hours in an 8 hour workday; occasionally climb ramps/stairs, balance, stoop, kneel, crouch, crawl; never climb ladders/ropes/scaffolds; and occasionally be exposed to extreme cold, vibration, moving mechanical parts, and unprotected heights. She

---

[1] Plaintiff received a denial from an ALJ for her previous claims for benefits on July 9, 2014. Tr. 76-91. Therefore, the ALJ's decision in this case focused on whether Plaintiff was disabled after July 9, 2014. Tr. 20-21.

>   is limited to simple, routine tasks not at a production pace, can only occasionally interact with the public and supervisors, and can only occasionally adjust to changes in workplace settings.

Tr. 26. After considering the testimony of a vocational expert ("VE"), the ALJ determined that Plaintiff could perform jobs existing in significant numbers in the national economy, and that, therefore, she was not disabled. Tr. 33-34.

Plaintiff raises three arguments on appeal: (1) that the ALJ committed several errors in assessing the medical evidence; (2) that the ALJ did not support his finding regarding Plaintiff's time off task; and (3) that the ALJ inadequately assessed Plaintiff's statements regarding the intensity, persistence, and limiting effects of her symptoms. ECF 13-1 at 6-9. In her reply memorandum, Plaintiff also argues that the ALJ failed to address an apparent conflict between the VE testimony and the Dictionary of Occupational Titles ("DOT"). ECF 18 at 5. Each argument lacks merit for the reasons discussed below.

I.  **Medical Support for ALJ's Decision**

Plaintiff raises several challenges to the ALJ's consideration of the medical evidence. First, Plaintiff argues that the ALJ erred in assessing the medical opinion evidence and improperly "played doctor." Specifically, Plaintiff suggests that the ALJ erred in not assigning more weight to the opinion of Plaintiff's treating physician, Dr. Wand, and assigning too much weight to the opinion of the non-examining State agency physicians.

The RFC determination is an issue ultimately reserved for the ALJ. 20 C.F.R. §§ 404.1527(d)(2), 404.1546(c), 416.927(d)(2), 416.946(c). An ALJ must base the RFC analysis "on all of the relevant medical and other evidence," 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3), and must assign weight to any relevant medical opinions, *see* 20 C.F.R. §§ 404.1527(c), 416.927(c). However, the ALJ "need not parrot a single medical opinion, or even assign 'great weight' to any opinions, in determining an RFC assessment." *Jackson v. Comm'r, Soc. Sec.*, Civil Case No. CCB-13-2086, 2014 WL 1669105, at *2 (D. Md. Apr. 24, 2014). A treating physician's opinion is given controlling weight when two conditions are met: (1) it is well-supported by medically acceptable clinical laboratory diagnostic techniques; and (2) it is consistent with other substantial evidence in the record. *See* 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); *Craig*, 76 F.3d at 590 (citation omitted). However, where a treating source's opinion is not supported by clinical evidence or is inconsistent with other substantial evidence, it should be accorded significantly less weight. *Craig*, 76 F.3d at 590. If the ALJ does not give a treating source's opinion controlling weight, the ALJ will assign weight after applying several factors, such as the length and nature of the treatment relationship, the degree to which the opinion is supported by the record as a whole, and any other factors that support or contradict the opinion. 20 C.F.R. §§ 404.1527(c), 416.927(c).

Here, Dr. Wand's assessment, dated September 21, 2015, included severe limitations on Plaintiff's functioning due to Plaintiff's muscle weakness accompanying her myositis. Tr. 1962-

65. The ALJ assigned Dr. Wand's opinion "partial weight because it is not well supported by the medical evidence of record, which indicates . . . that [Plaintiff's] myositis was episodic and largely stopped in 2015." Tr. 32. The ALJ supported his contention regarding Plaintiff's myositis in his RFC analysis. Tr. 27-28, 29-30. Accordingly, the ALJ adequately supported his conclusion that Dr. Wand's opinion was inconsistent with other evidence in the record.

The ALJ assigned "great weight" to the opinions of the State agency physicians. Tr. 31. Plaintiff claims the physicians "only considered the effects of sprains and strains, obesity, pancreatitis, an affective disorder and substance abuse," and failed to consider the combined effect of all of Plaintiff's impairments. ECF 13-1 at 6. However, in reviewing the physicians' opinions as a whole, it is clear that they did consider the combined effect of Plaintiff's impairments, including Plaintiff's myositis, and that the physician at the reconsideration level mentioned Plaintiff's rhabdomyolysis. Tr. 112-14, 128-30, 147-50, 164-67. Contrary to Plaintiff's claim, the physicians also explicitly mentioned Plaintiff's muscle biopsy. Tr. 114, 130, 148, 165. Accordingly, I find no error in the ALJ's assignment of weight to the opinions of the State agency physicians.

Next, Plaintiff claims that the ALJ failed to address a nerve conduction and EMG study performed in July 2017, or, alternatively, that the ALJ overstepped his bounds by interpreting that study without the aid of a consultative physical examination or medical expert testimony. The ALJ stated that the nerve conduction and EMG study "revealed evidence of severe peripheral neuropathy of the bilateral lower extremities with no clear etiology. The findings were more consistent with mixed axonal loss and demyelination." Tr. 28. Far from Plaintiff's claim that the ALJ made a "lay assumption of medical expertise," ECF 13-1 at 7, the ALJ's discussion of the results of the nerve conduction and EMG study came verbatim from the notes of the treating physician who conducted the study, Tr. 2428.

Plaintiff also challenges the ALJ's conclusions regarding Plaintiff's mental capability to work, particularly in light of the State agency psychologists' findings that Plaintiff required "a supportive, communicative supervisor, clear, attainable performance goals, and a more isolated performance environment," Tr. 116, 132, 151, 168. While Plaintiff implies that the VE testified that such a limitation would preclude competitive employment, the transcript from the hearing shows that, in response to questioning from Plaintiff's counsel, the VE actually discussed a "sheltered work environment," in which an individual would have to be accompanied by a job coach, Tr. 70-71. More generally, the ALJ provided a thorough analysis of Plaintiff's mental limitations, Tr. 30-31, and it is not the role of this court to reweigh the evidence, even if Plaintiff can point to other evidence that might justify a different outcome. *See Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990).

  II.     **Plaintiff's Time Off Task**

Next, Plaintiff argues that the ALJ did not adequately explain his departure from the prior ALJ's finding limiting Plaintiff to being on task 90% of the time. In the leading Fourth Circuit case on this issue, *Albright v. Commissioner of Social Security Administration*, 174 F.3d 473,

476 (4th Cir. 1999), the Court explained that the SSA should consider prior findings made in a claimant's earlier application, but should not reflexively adopt those earlier findings so as to "mechanistically merge two claims into one." The Fourth Circuit clarified that its earlier decision in *Lively v. Secretary of Health and Human Services*, 820 F.2d 1391 (4th Cir. 1987), was "best understood as a practical illustration of the substantial evidence rule," rather than a direct application of the doctrine of claim preclusion or *res judicata*. *Albright*, 174 F.3d at 477.

Here, the ALJ assigned "great weight" to the findings of the previous ALJ, and noted that "[t]he period being adjudicated immediately follows the previously adjudicated period but significant medical evidence has been received in connection with the current application that shows the claimant's conditions have changed since the date of the prior ALJ decision." Tr. 21. The ALJ here clearly concluded that the medical evidence supported greater physical limitations than the previous ALJ, who had found that Plaintiff was capable of light work, Tr. 85. However, it is not clear that the ALJ in Plaintiff's current application came to a different conclusion than the previous ALJ regarding Plaintiff's mental abilities, rather than simply expressing Plaintiff's mental limitations in a different form.[2] More crucially, the ALJ supported his findings with substantial evidence, *see* Tr. 30-31, and the previous ALJ's finding in this case was not "such an important and probative fact as to render the subsequent finding . . . unsupported by substantial evidence." *See Albright*, 174 F.3d at 477-78.

### III. Assessment of Plaintiff's Statements Regarding Her Symptoms

Next, Plaintiff argues that the ALJ erred in concluding that her statements regarding the intensity, persistence, and limiting effects of her symptoms were not entirely consistent with the medical evidence and other evidence. Plaintiff claims that the ALJ never explained in his narrative discussion what evidence undercut the Plaintiff's allegations. In contrast, the ALJ noted the lack of imaging to corroborate complaints of back pain, that Plaintiff's hypothyroidism was stable with medication, that Plaintiff's episodes of myositis and rhabdomyolysis were sporadic and stopped by the end of 2015, that treatment notes did not corroborate her claims of medication side effects, that her pancreatitis was sporadic and stopped in 2015, and that Plaintiff's activities of daily living included housework and caring for her mother and grandchildren. Tr. 29-30. While Plaintiff cites to isolated pieces of evidence that might support a contrary conclusion, my review of the ALJ's decision is confined to whether substantial evidence, in the record as it was reviewed by the ALJ, supports the decision and whether correct legal standards were applied. *See Richardson v. Perales*, 402 U.S. 389, 390 (1971). Even if there is other evidence that may support Plaintiff's position, I am not permitted to reweigh the

---

[2] Compare previous ALJ's finding that Plaintiff "has the ability to perform the following tasks 90 per cent [sic] of the time: understand, remember, and carry out detailed instructions, maintain attention and concentration for extended periods, and complete a normal work day and work week without interruption from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods," Tr. 85, with the ALJ's finding here that Plaintiff "is limited to simple, routine tasks not at a production pace, can only occasionally interact with the public and supervisors, and can only occasionally adjust to changes in workplace settings," Tr. 26.

evidence or to substitute my own judgment for that of the ALJ. *See Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990).

Furthermore, the ALJ's assignment of "great weight" to the opinions of the State agency physicians did not require the ALJ to adopt every particular finding by those physicians, such as the indication on reconsideration that the Plaintiff's statements about her symptoms were "[f]ully [c]onsistent" with the record, Tr. 147, 164. In this case, the ALJ supported his findings regarding the intensity, persistence, and limiting effects of Plaintiff's symptoms with substantial evidence from the medical record, as well as Plaintiff's reports of her activities of daily living.

### IV. Conflict Between VE Testimony and DOT

Finally, in her reply, Plaintiff argues that the ALJ failed to address an apparent conflict between the VE testimony and the DOT. Plaintiff cites to *Thomas v. Berryhill*, 916 F.3d 307 (4th Cir. 2019), in arguing that a conflict exists between a limitation to simple routine instructions and positions in the DOT with a reasoning level greater than one. Plaintiff is correct that under *Thomas*, the ALJ should have resolved the apparent conflict between the limitation to "simple, routine tasks," Tr. 26, and the representative occupations that required a reasoning level greater than one. However, as Plaintiff has noted, the representative occupation of lens inserter only requires a reasoning level of one. U.S. Dep't of Labor, *Dictionary of Occupational Titles* § 713.687-026, Lens Inserter (4th ed. 1991). The VE testified that the lens inserter had 219,000 jobs available nationally. Tr. 68. Therefore, even though the ALJ did not resolve the apparent conflict with the other representative occupations, there is still substantial evidence to support the ALJ's conclusion that Plaintiff is capable of performing jobs that exist in significant numbers in the national economy. *See Lawler v. Astrue*, Civil Action No. BPG-09-1614, 2011 WL 1485280, at *5 (D. Md. Apr. 19, 2011) (finding that where only 75-100 jobs existed in the region where plaintiff lived did "not undermine the ALJ's conclusion that plaintiff [was] capable of performing work that exists in significant numbers in the national economy") (citing *Hicks v. Califano*, 600 F.2d 1048, 1051 n.2 (4th Cir. 1979) (declining to determine that 110 regional jobs would be an insignificant number)). Accordingly, any error by the ALJ in not resolving apparent conflicts with the other representative occupations was harmless.

### V. Conclusion

For the reasons set forth herein, Plaintiff's Motion for Summary Judgment, ECF 13, is DENIED, and Defendant's Motion for Summary Judgment, ECF 17, is GRANTED. The SSA's judgment is AFFIRMED pursuant to sentence four of 42 U.S.C. § 405(g). The Clerk is directed to CLOSE this case. Despite the informal nature of this letter, it should be flagged as an opinion. An implementing order follows.

Sincerely yours,

/s/

Stephanie A. Gallagher
United States Magistrate Judge